NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-268

GEORGE MACKIE

vs.

KATRIN ROUSE-WEIR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, George Mackie, has brought suit against the defendant, Dr. Katrin Rouse-Weir, who is a clinical and forensic psychologist hired by the district attorney for Worcester County to examine documents provided by the district attorney and to determine whether Mackie met the definition of a sexually dangerous person under G. L. c. 123A, § 1, in order to assist the district attorney's office in deciding whether to seek a probable cause hearing in order to have the plaintiff civilly committed.  Rouse-Weir authored a thirty-nine-page report for the district attorney, in which she determined that Mackie met the criteria for a sexually dangerous person, and the district attorney filed a petition alleging probable cause seeking Mackie's civil commitment.  See In re Johnstone, 453 Mass. 544, 546-547 (2009), citing G. L. c. 123A, § 12.  At Mackie's

request, Rouse-Weir subsequently met with him, so that he could explain his position that certain information contained in a police report was inconsistent with the actual facts of the case. Rouse-Weir submitted an updated report, testified at the probable cause hearing, and the report was submitted as an exhibit. The complaint alleges that Rouse-Weir failed to submit an accurate and truthful report to the court, that the updated report omitted twenty-seven paragraphs from the original report, that Rouse-Weir falsely claimed that she had never reviewed the information contained in the omitted paragraphs, and that these omissions led to the deprivation of Mackie's liberty. The plaintiff has alleged violations of G. L. c. 12, § 11I, the Massachusetts Civil Rights Statute, 42 U.S.C. § 1983, medical malpractice, and perjury.

Rouse-Weir filed a motion to dismiss pursuant to Mass. R. Civ. P. Rule 12 (b) (6), 365 Mass. 754 (1974), which was allowed by the motion judge on the ground that Mackie had failed to state a claim upon which relief could be granted because Rouse-Weir was entitled to absolute quasi-judicial immunity, or, alternatively, qualified immunity because Mackie had not "plausibly alleged facts that Dr. Rouse-Weir violated a statutory or Constitutional right that was clearly established at the time she made her report." See Rodriques v. Furtado, 410 Mass. 878, 882 (1991), quoting Harlow v. Fitzgerald, 457 U.S.

800, 818 (1982); see also id. ("government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").[1]  The plaintiff has appealed.  We affirm in part and reverse in part the order of dismissal.

Discussion.  In reviewing the allowance of a motion to dismiss, we must take the allegations of the complaint as true and "draw all reasonable inferences in favor of the plaintiff[]."  General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007).  The pro se plaintiff argues that the judge erred in concluding the defendant has immunity from suit.  The defendant defends solely on the ground that she has either absolute or qualified immunity.

---

[1] The verified complaint states Mackie was suing Rouse-Weir in both her individual capacity and "in any official capacity she may be entitled to."  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" "of which an officer is an agent," Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).  Mackie does not mention in his brief that Rouse-Weir was sued in any but her individual capacity, and makes no argument about immunity based on the suit having named Rouse-Weir not only in her individual capacity, but in any official capacity to which she was entitled.  We therefore express no opinion on the matter.

3

Any claim of absolute prosecutorial immunity the defendant has is necessarily derivative of that belonging to the office that hired her. Prosecutors have "quasi-judicial" absolute prosecutorial immunity in some circumstances. Other executive branch officials exercising executive functions have, at most, only qualified immunity. Prosecutors, however, are entitled to absolute immunity only when they undertake tasks in their prosecutorial capacity, not when they act as witnesses, even as complaining witnesses. See Kalina v. Fletcher, 522 U.S. 118, 129 (1997). Thus, even were the defendant entitled to the same immunity as prosecutors in the district attorney's office that hired her, a question on which we express no opinion, given her role here -- she was an investigator and a witness, at most no more than a complaining witness, so she would not be entitled to absolute immunity.

In the alternative, the defendant argues that she is entitled to qualified immunity. As the plaintiff notes, the Supreme Court of the United States, however, has held that for purposes of § 1983, a private individual engaged in a governmental function does not always have qualified immunity. See Richardson v. McKnight, 521 U.S. 399, 413 (1997). The defendant makes no response.

In Filarsky v. Delia, 566 U.S. 377 (2012), however, not cited by the plaintiff, the Court extended qualified immunity to

4

a private lawyer retained by a city to participate in internal affairs investigations.  It distinguished McKnight as a case in which the circumstances, "'a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertak[ing] that task for profit and potentially in competition with other firms' . . . combined sufficiently to mitigate the concerns underlying recognition of governmental immunity under § 1983."  Id. at 393.  It said:  "Nothing of the sort is involved here, or in the typical case of an individual hired by the government to assist in carrying out its work." Id.

Although the question is not free from doubt, we think that the defendant is sufficiently analogous to the private lawyer in Filarsky that she is entitled to qualified immunity.  The plaintiff does not argue that the common-law immunity with respect to his State claims differs from that under § 1983.

The question then is whether the plaintiff has alleged any violations of a clearly established right.  Three of the plaintiff's arguments are easily addressed:  First, the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, can be violated only through interference with constitutional or statutory rights by "by threats, intimidation or coercion."  See G. L. c. 12, § 11H.  As the plaintiff has not alleged threats,

5

intimidation or coercion, he has not alleged a violation of a clearly established right under that statute.

Second, the plaintiff alleges medical malpractice. But it is certainly not clearly established that a psychologist in the position of the defendant is a "health care provider" to an individual in the position of the plaintiff, which is the sine qua non of a medical malpractice action. Vasa v. Compass Med., P.C., 456 Mass. 175, 179-180 (2010).

Third, there is no civil cause of action at all for perjury, which is a crime and not a tort.

This brings us to the plaintiff's final claim, that there was a violation of his Federal constitutional right to due process in violation of 42 U.S.C. § 1983. The plaintiff argues that the right to due process of law is clearly established. That formulation, however, looks at the issue somewhat too broadly. The primary allegation is that the defendant removed twenty-seven paragraphs from her original report when that removal was unwarranted, deliberately, in order to bolster the case that there was probable cause to hold the plaintiff, and that she lied about having seen the portion of the police report from which those paragraphs were drawn.

There can be little doubt that lying under oath, deliberately, as part of a successful strategy to have an individual wrongly incarcerated would amount to a violation of a

clearly established right under the due process clause. However, the plaintiff has neither alleged nor explained how the alleged excision of these paragraphs, or the alleged lying about it, was material to the probable cause determination. Having read the paragraphs, we conclude they are certainly not, as the plaintiff at one point describes them, "exculpatory." In his brief he argues that he told the defendant that he could not have done some of the things described in those paragraphs. But he does not explain why including even amended paragraphs would have been more beneficial to him than the deletion of the offending paragraphs. He has thus not alleged facts, rather than asserting conclusions, showing the defendant's actions in allegedly deleting these paragraphs and lying about it were material to the finding of probable cause. And the plaintiff has not demonstrated that the removal of immaterial paragraphs from a report in such circumstances, and even lying about it, violates a clearly established constitutional right redressable under § 1983.

Finally, however, the plaintiff also argues that the defendant made an inaccurate and untruthful diagnosis of pedophilic disorder. If that were true, it would be material to the probable cause determination, and, if done intentionally, it would violate a clearly established right.

The difficult question with which we are left is whether this is alleged in the complaint.  The complaint makes no specific reference to a diagnosis or to pedophilic disorder.  In the "medical malpractice" section of the complaint, however, the plaintiff does state:  "The Defendant's actions and/or omissions resulted in her failure to submit an accurate and truthful report to the Court, after meeting with the Plaintiff."

We are a notice pleading jurisdiction, and so a complaint need only "contain 'a short and plain statement of the claim,' Mass. R. Civ. P. 8 (a) (1), 365 Mass. 749 (1974), which affords fair notice to the defendant of the basis and nature of the action against him."  Berish v. Bornstein, 437 Mass. 252, 269 (2002).  Under the rules of notice pleading we think that an allegation that a report amounted to medical malpractice is sufficient to put the defendant on notice that what is alleged is that her report may have included medical conclusions, including diagnoses, that were not truthful.  To be sure, these were pled as part of the medical malpractice count.  But "[u]nder the Massachusetts practice of notice pleading, there is no requirement that a complaint state the correct substantive theory of the case" (quotation and citations omitted).  Id.

Consequently, although in all other respects the dismissal of the complaint is affirmed, with respect to this aspect of the

8

plaintiff's due process claim, it must be reversed.

So ordered.

By the Court (Rubin,
  Wolohojian & Brennan, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered: July 31, 2023.

---

[2] The panelists are listed in order of seniority.